IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-02487-REB-MEH

AUTOMATED LENDING, INC., a Colorado corporation,

    Plaintiff,

v.

KAREN RANSOM, an individual and d/b/a Oxford Properties and/or Oxford Estate Properties, LLC,

    Defendant.

## RECOMMENDATION ON PLAINTIFF'S DAMAGES

**Entered by Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is Defendant's Confession of Judgment and Plaintiff's Brief Regarding Damages [Docket #29]. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. COLO. L.Civ.R 72.1.C, this matter has been specially referred to this Court to conduct an evidentiary hearing and submit proposed findings of fact and recommendation for rulings. For the reasons set forth below, the Court recommends that the Plaintiff be awarded damages as follows.

**I.    Facts**

Evidence presented at the hearing held August 31, 2006, established the following facts: Plaintiff Automated Lending and Defendant Ransom entered an agreement on March 25, 2005. Exh. #1. Plaintiff's representative Mr. Cox testified that the purpose of this Agreement was to provide last-minute funding for Defendant to complete the purchase of a residential development in Arkansas. This Agreement provided that Plaintiff would lend to Defendant $80,000.00, and Defendant would repay the money under the following terms: (1) the principal plus a profit of $48,000.00; (2) payment

in full by May 25, 2006; and (3) one point on the purchase price of the Mallard Point Golf & Residential project in Lonoke, Arkansas if payment in full by May 25, 2006, or two points if payment in full after May 25, 2006. Default of the Agreement allowed interest to accrue at the rate of 18% per annum or the highest rate allowed by law, whichever is less, and allowed for an award of reasonable attorney's fees if an action is instituted to collect on this Agreement. Exh. #1. The Agreement states that it is governed by the laws of the State of Texas.

Defendant failed to timely repay the funds because the purchase of the subject property in Arkansas was not completed (Exhs. ## 8-9), and the parties executed an Amendment to the Agreement on August 1, 2005. Exh. #2. This Amendment allowed Defendant to pay under the original terms no later than August 26, 2006, and required Defendant to pay reasonable attorney's fees in the event that Plaintiff instituted an action to collect on the Agreement. Defendant again failed to timely pay (Exh. #9), and the parties executed a Second Amendment to the Agreement on September 1, 2005. Exh. #3. This Amendment gave Defendant until October 14, 2005, to complete payment under the original terms. After Defendant failed to timely pay under this Amendment, Plaintiff instituted the present action.

To resolve this lawsuit, the parties entered a Mutual Settlement and Release Agreement and Covenant Not to Sue ("the Settlement") on February 22, 2006. Exh. #4. The Settlement set forth a payment plan for Defendant and included an initial payment of $5,000.00. The Settlement provided that the parties would seek a stay of this action during the payment terms, and Defendant would receive a discount if all payments were timely completed. Once payments were completed, the parties would stipulate to a dismissal of this action. If payments were not timely completed, Plaintiff would have the right to file a Confession of Judgement signed by Defendant. After the initial $5,000.00

payment on February 21, 2006 (Exh. #4 at 2), Defendant again defaulted (Exh. #11), allowing Plaintiff to file the Confession of Judgment. Dock. #18. The Confession of Judgment states that Defendant Karen Ransom authorizes judgment against her in favor of Plaintiff in this lawsuit, including an award of attorney's fees and costs for this matter. Both parties were to submit a brief regarding the amount of damages within 15 days after the Confession of Judgment was filed.

The Confession of Judgement was filed on May 2, 2006. Both parties initially sought extensions of time in which to submit briefing on damages, which District Judge Blackburn granted. Docks. ##25, 28. Although Defendant received the requested extension, she failed to file a brief on damages. Defendant further requested a hearing on damages, which District Judge Blackburn granted by Special Order of Reference to United States Magistrate Judge. Dock. #30. The hearing was initially set for August 9, 2006, and Defendant requested that the hearing be reset until after September 25, 2006. Dock. # 32. Finding a lack of good cause for such a substantial delay, this Court reset the hearing to August 31, 2006. Dock. #34. Defendant failed to appear at the hearing and at no time filed a brief regarding damages.

**II.     Discussion**

    **A.     Validity of the Contract**

Mr. Cox testified that Defendant Ms. Ransom approached him about this short-term loan. Defendant reassured Mr. Cox that she would be an excellent personal guarantor for the loan because of her familial wealth. Exh. #5. Defendant explained that she stands to inherit a portion of her grandfather's estate, which estate was valued at $48 million. Defendant also explained that her family's wealth was primarily from real estate investments. Mr. Cox testified that Defendant proposed the terms of the Original Agreement and that Defendant had the assistance of counsel, Mr.

Brian Hernandez, during this time. Defendant notified Plaintiff that Mr. Hernandez, a CPA and lawyer, was no longer associated with her business in July 2006. Exh. #11 at 3. Based on the testimony at the hearing and email exhibits from Ms. Ransom, the Court believes that Defendant understood the terms of the contract and intended to bound by them. Even after the property in Arkansas failed to close, Defendant continued to reaffirm her obligation to Plaintiff and sought extensions of time in which to complete repayment. The Court, therefore, finds that a valid contract existed between Plaintiff and Defendant and recommends that damages be awarded to Plaintiff based on her breach, under the terms to which Defendant agreed in Defendant's Confession of Judgment.

### B.   Contractual Damages

The Confession of Judgement executed by Defendant allows Plaintiff to collect on the damages sought in its Complaint. Thus, the operative Agreement for purposes of determining damages is not the Settlement executed in February 2006, but rather, is the Second Amendment and Agreement, executed in September 2005. This Agreement expressly provides for the following contractual damages: (1) $80,000.00 in principal; (2) $48,000.00 in profit; (3) two points totaling $75,000.00; (4) attorney's fees incurred in seeking to collect on the Agreement; and (4) interest at the rate of 18% per annum in the event of default. Exhs. ##1, 3. Plaintiff alleges that through the hearing on August 31, 2006, Plaintiff had spent $28,924.29, in attorney's fees. Exh. #20, supported by Exhs. ##14-16, 22. Because the Second Amendment includes the same payment and interest terms of the original Agreement, Defendant defaulted on the loan by not paying the principal plus specified profit on May 25, 2005. The amount of default, therefore, is $80,000.00 plus $48,000.00, plus $75,000.00, or a total of $203,000.00.

Interest is compounded annually and calculated as follows:[1] Defendant owed interest on $203,000.00 for nine months before making a $5,000.00 payment in February 2006, totaling $27,405.00. Defendant then owed interest on $198,000.00 from February 2006 until May 2006 totaling $8,910.00. The interest from the first year ($36,315.00) is added to the principal ($198,000.00) for a balance of $234,315.00. Defendant owed interest on this balance from May 2006 and continuing through October 2006, totaling $21,088.35, for a total of interest owed through the date of this Recommendation of $57,403.35.

Under the Agreement, Plaintiff is also entitled to recover its attorney's fees incurred in seeking to recover these sums. Plaintiff has provided records of attorney's fees totaling $28,924.29. These represent costs actually incurred by Plaintiff, and the Court believes this total to be reasonable based on the time spent repeatedly negotiating methods of payment with Defendant. Based on these calculation, the Court recommends that Plaintiff be awarded contractual damages in the amount of $284,327.64.

### C. Consequential Damages

Plaintiff also argues that it is entitled to consequential damages incurred as a result of Defendant's failure to repay the loan in two categories – compensation for time spent trying to recover from Defendant and interest paid by Plaintiff on loans necessary once Defendant defaulted on the loan. First, Plaintiff argues that its principals spent over 250 hours working on "the loan, the breach, the lawsuit, the settlement, and the after-effects." Exh. #21. At the hearing, Mr. Cox testified

---

[1] Plaintiff incorrectly calculated interest in its Brief Regarding Damages by deducting the $5,000.00 payment before calculating any interest from May 25, 2005, rather than as of the date of payment on February 21, 2006. The Court has also extended Plaintiff's calculations from the date of the hearing to the date of this Recommendation.

that he spent 125 hours working on this matter, only 7 hours of which he attributed to his work before entering the Agreement with Defendant. Mr. Cox testified that his business partner Sean Mahoney had spent an equal amount of time on this matter. Mr. Cox explained that little time was spent before the Agreement because Defendant was a childhood friend of his girlfriend and, as the daughter of a wealthy family in Aspen, Colorado, stood to inherit a large sum of money. Thus, he initially found her personal guarantee on the loan sufficient. Mr. Cox further testified that his normal hourly earned rate is $300.00 per hour, but, that for purposes of this litigation, he sought damages at the rate of $150.00 per hour for his time spent on this matter. Mr. Cox explained that he calculated this rate by dividing his annual income by the number of hours he worked in a year.

Although Mr. Cox and Mr. Mahoney have undoubtedly spent significant time seeking to recover from Defendant, they have not demonstrated what income they would have received had they not spent time on this matter. In fact, Mr. Cox does not allege that this time prohibited him from entering other transactions for which he would have made a certain sum of money, nor does Mr. Cox explain how much income he would have received on any given transaction. In fact, according to his testimony, Plaintiff would have received profit in the amount of either $48,000.00 or $123,000.00 (depending on when Defendant completed payment) for his initial seven hours of work. Based on these circumstances, the Court recommends that Plaintiff's claim for consequential damages based on time spent be denied.

Second, Plaintiff claims that it had agreed to enter two real estate transactions prior to Defendant asking for the loan. Because of the timing in which Defendant agreed to repay the loan, Mr. Cox testified that Plaintiff lent money set aside for other investments to Defendant under the agreement that the money would be repaid in time for Plaintiff to complete these other transactions.

*See also* Exh. #5. Because Defendant did not repay the loan, Plaintiff was forced to borrow money for these transactions that it otherwise would not have borrowed.

These transactions are as follows: Mr. Cox testified that Plaintiff purchased property in Hawaii in July 2005 and was required to borrow $100,00.00 at a rate of 5% interest per annum. Mr. Cox testified that the interest paid on this loan is $5,635.04 and that closing costs associated with this loan were $961.27, for a total of $6,596.31. Plaintiff also purchased property in Boulder, Colorado in June 2005 and was required to borrow $45,000.00 it would not have otherwise needed to borrow at a rate of 9% interest per annum. Mr. Cox testified that the interest paid on this loan is $5,153.58, and the that the closing costs associated with this loan were $85.21, for a total of $5,238.79. For both transactions, Plaintiff had already agreed to enter these transaction before being approached by Defendant for a loan. These costs, therefore, represent direct expense incurred by Plaintiff as a result of Defendant's breach. As such, the Court recommends that Plaintiff be awarded consequential damages in the amount of $11,835.10.

## III.   Conclusion

Accordingly, for the reasons stated above, the Court RECOMMENDS that judgment be entered in favor of Plaintiff and against Defendant Karen Ransom in the amount of $284,327.64 in contractual damages and $11,835.10 in consequential damages for a total judgment of $296,162.74. Under Fed. R. Civ. P 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.[2]

---

[2] The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed

Dated at Denver, Colorado this 1st day of November, 2006.

BY THE COURT:

s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge

---

findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy of this Recommendation may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).